**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| _____ ) | |
| **HDI-GERLING AMERICA INSURANCE** ) | |
| **COMPANY, individually and as assignee** ) | |
| **and/or subrogee of Feeney Brothers Excavation** ) | |
| **LLC, Mohawk Power Corporation d/b/a** ) | |
| **National Grid, and Kelly L. Melvin-Feeney** ) | |
| **(individually and as personal representative of** ) | |
| **the estate of Gary Thomas Feeney),** ) | |
| ) | |
| **Plaintiff/Counterclaim-Defendant,** ) | **Civil Action No.** |
| ) | **15-10338-FDS** |
| **v.** ) | |
| ) | |
| **NAVIGATORS INSURANCE COMPANY,** ) | |
| ) | |
| **Defendant/Counterclaim-Plaintiff.** ) | |
| _____) | |

**MEMORANDUM AND ORDER ON**
**HDI-GERLING'S PARTIAL MOTION TO DISMISS**

**SAYLOR, J.**

This action arises out of an insurance coverage dispute. Plaintiff HDI-Gerling America Insurance Company brought suit against defendant Navigators Insurance Company seeking declaratory relief and alleging claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and violation of Mass. Gen. Laws ch. 93A. Navigators Insurance filed counterclaims against HDI-Gerling, alleging claims for bad faith, equitable subrogation, breach of the implied covenant of good faith and fair dealing, violation of Mass. Gen. Laws ch. 93A, and declaratory relief. Jurisdiction is based on diversity of citizenship.

On May 8, 2015, HDI-Gerling filed a motion to dismiss the claims of Navigators for bad faith, equitable subrogation,[1] breach of the implied covenant of good faith and fair dealing, and violation of Mass. Gen. Laws ch. 93A.  For the following reasons, HDI-Gerling's motion will be granted in part and denied in part.

## I.    <u>Background</u>

### A.    <u>Factual Background</u>

Feeney Brothers Excavation, LLC is a construction company.  (Compl. ¶ 13).  HDI-Gerling America Insurance Company is an insurer.  (*Id.* ¶ 1).  In 2013, HDI-Gerling issued two insurance policies to Feeney Brothers.  (*Id.* ¶¶ 6-9).

One policy was a general liability policy with a policy period from February 1, 2013, to February 1, 2014, and limit of insurance of $1 million per occurrence (the "HDI General Liability Policy").  (Compl. Ex. A).  Mohawk Power Corporation, doing business as National Grid, was an additional insured under the general liability policy.  (Compl. ¶¶ 19-20).

The other policy was an employer's liability policy (the "HDI Employer Liability Policy").  (Compl. ¶¶ 8-9; Compl. Ex. B).  It had a policy period from February 1, 2013, to February 1, 2014, and provided limits of liability of $1 million per each accident.  (Compl. ¶ 8).  However, "the New York Limit of Liability Endorsement provides that with respect to . . . Employers Liability Insurance, liability is unlimited if the bodily injury is compensable under the N[ew] Y[ork] worker's compensation law."  (*Id.* ¶ 9).  National Grid was not an additional insured under the employer's liability policy.  (*Id.* ¶ 21).

Navigators Insurance Company issued a commercial excess insurance policy to Feeney Brothers with a policy period from February 1, 2013, to February 1, 2014, and limits of

---

[1] During the motion hearing, Navigators Insurance informed the Court that it will not pursue its claim for equitable subrogation.  Accordingly, that claim will be dismissed.

insurance of $10 million per occurrence and $10 million general aggregate (the "Navigators Excess Policy"). (Compl. ¶¶ 10-11; Compl. Ex. C). National Grid was an additional insured under the excess policy. (Compl. ¶ 22). The Navigators Excess Policy identified the HDI General Liability Policy and HDI Employer Liability Policy as underlying insurance policies. (*Id.* ¶ 23).

On April 13, 2013, Gary Thomas Feeney was killed as a result of a workplace accident in New York. (Compl. ¶ 13). At the time of the accident, he was employed by Feeney Brothers on a job it was performing under a contract with National Grid. (*Id.*).

On November 8, 2013, Kelly Melvin-Feeney, individually and as representative of Gary Thomas Feeney's estate, filed suit against National Grid in the Supreme Court of New York (the "Feeney Action"). The suit alleged that National Grid negligently caused the decedent's accident and death. (Compl. ¶¶ 12-13). National Grid sought coverage as an additional insured under the HDI-Gerling General Liability Policy and the Navigators Excess Policy. (*Id.* ¶ 18; Countercl. ¶ 9). The counterclaims allege that HDI-Gerling agreed to provide defense and indemnity under the HDI General Liability Policy. (Countercl. ¶ 9). It negotiated a settlement of the action for $1.5 million. (Compl. ¶¶ 53-58; Countercl. ¶ 11).

HDI-Gerling paid the entire $1.5 million settlement, but contends that the $500,000 difference between the $1 million HDI General Liability Policy limit and the $1.5 million settlement should be paid from the Navigators Excess Insurance Policy. (Compl. ¶¶ 53-60). Navigator, however, contends that HDI-Gerling should have asserted a claim for contractual indemnity, common-law indemnity, and contribution against Feeney Brothers, which would have triggered the HDI Employer Liability Policy. (Countercl. ¶ 12). As a result, Navigators

contends that HDI-Gerling owes the $500,000 difference between the $1 million HDI General

Liability Policy limit and the $1.5 million settlement.

### B.      Procedural Background

On February 11, 2015, HDI-Gerling filed a complaint against Navigators.  It filed the

complaint both individually and as assignee and/or subrogee of Feeney Brothers Excavation

LLC, Mohawk Power Corporation doing business as National Grid, and Kelly L. Melvin-Feeney

(individually and as personal representative of the estate of Gary Thomas Feeney).  The

complaint contains claims for (1) declaratory relief, (2) breach of contract, (3) breach of the

implied covenant of good faith and fair dealing, and (4) violation of Mass. Gen. Laws ch. 93A.

In substance, HDI-Gerling seeks recovery of $500,000 that it alleges Navigators owes as

payment based on the excess policy.

On April 17, 2015, Navigators filed an answer with five counterclaims for (1) bad faith,

(2) equitable subrogation, (3) breach of the implied covenant of good faith and fair dealing, (4)

violation of Mass. Gen. Laws ch. 93A, and (5) declaratory relief.  HDI-Gerling has moved to

dismiss Counts One through Four of the counterclaims.

## II.    Legal Standard

On a motion to dismiss, the Court "must assume the truth of all well-plead[ed] facts and

give . . . plaintiff the benefit of all reasonable inferences therefrom."  *Ruiz v. Bally Total Fitness

Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir.

1999)).  To survive a motion to dismiss, the complaint must state a claim that is plausible on its

face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  That is, "[f]actual allegations must

be enough to raise a right to relief above the speculative level, . . . on the assumption that all the

allegations in the complaint are true (even if doubtful in fact)."  *Id.* at 555 (citations omitted).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556).  Dismissal is appropriate if the facts as alleged do not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (alterations omitted) (internal quotation marks omitted).

## III.   Analysis

### A.   Bad Faith Claim, Chapter 93A Claim, and Choice of Law

Where federal jurisdiction is based on diversity of citizenship, "a federal court must draw the substantive rules of decision, including conflict of law principles, from the law of the forum state." *Butler v. Balolia*, 736 F.3d 609, 612 (1st Cir. 2013).  "The first step in a choice of law analysis is to determine whether an actual conflict exists between the substantive laws of the interested jurisdictions"—here, Massachusetts and New York. *Reicher v. Berkshire Life Ins. Co. of Am.*, 360 F.3d 1, 4 (1st Cir. 2004).  Because New York recognizes a direct claim for bad faith by an excess insurer against a primary insurer, *New England Ins. Co. v. Healthcare Underwriters Mutual Ins. Co.*, 295 F.3d 232, 241 (2d Cir. 2002), and Massachusetts does not, *Express, LLC v. Club Monaco U.S., Inc.*, 2002 WL 31973223, *5 (Mass. Super. Ct. Dec. 10, 2002), New York and Massachusetts law conflict.  It is therefore necessary to engage in a choice-of-law analysis.

To determine how to proceed with the choice-of-law analysis, the Court must determine whether the bad-faith claim under New York law sounds in contract or tort.  In its opposition, Navigators contends that "[a]lthough the relationship between a primary and an excess insurer is not one involving direct privity of contract, the relationship is one that is grounded in the contractual relationships that each insurer has with their insured." (Opp. at 7).  It therefore

contends that "[t]o the extent that Navigators asserts a cause of action against HDI-Gerling that is derivative of its insured's relationship with HDI-Gerling, it should be considered to arise out of a contractual relationship." (*Id.*). HDI-Gerling contends that because the "claims against HDI-Gerling sound in contract only to the extent that they are derivative of the rights of the insureds[,] . . . Navigators' bad faith claim does not sound in contract." (Reply at 11-12). It contends that "Navigators' claim for bad faith under New York law arises from an independent and direct duty owed by HDI-Gerling, neither derivative of the insureds' relationship with HDI-Gerling nor arising from a contractual relationship between Navigators and HDI-Gerling." (*Id.*).

It is well-settled in New York "that an insurer may be held liable for the breach of its duty of 'good faith' in defending and settling claims over which it exercises exclusive control on behalf of its insured." *Pavia v. State Farm Mut. Auto. Ins. Co.*, 82 N.Y.2d 445, 452 (1993). "The duty of 'good faith' settlement is an implied obligation derived from the insurance contract." *Id.* (citing *Gordon v. Nationwide Mut. Ins. Co.*, 30 N.Y.2d 427, 436-37 (1972)). In New York, "the primary carrier owes to the excess insurer the same fiduciary obligation which the primary insurer owes to its insured, namely, a duty to proceed in good faith and in the exercise of honest discretion, the violation of which exposes the primary carrier to liability beyond its policy limits." *Hartford Accident & Indem. Co. v. Michigan Mut. Ins. Co.*, 462 N.Y.S.2d 175, 178, 93 A.D.2d 337, 341 (N.Y. App. Div. 1983). The excess insurer's "right to proceed against any third party alleged to be primarily responsible arises by operation of law, out of the underlying relationship between the insurer and its insured." *Id.* Therefore, the bad-faith claim under New York law in the present case arises out of contract.[2]

---

[2] There is at least some doubt as to whether the bad-faith claim arises out of contract or tort. In *Hartford Accident*, the court's language was ambiguous as to the root of the right to proceed on a bad-faith claim. 462 N.Y.S.2d at 178-79, 93 A.D.2d at 341-42. At one point in the opinion, it wrote that the "right to proceed against any third party alleged to be primarily responsible arises by operation of law, out of the underlying relationship between

Massachusetts courts apply "a functional choice-of-law approach that responds to the interests of the parties, the States involved, and the interstate system as a whole." *Bushkin Assoc. v. Raytheon Co.*, 393 Mass. 622, 631.  In insurance disputes, Massachusetts courts look to the Restatement (Second) of Conflict of Laws (1971) as a source for guidance.  *Id.* at 632.

> Three sections of the Restatement (Second) of Conflict of Laws (1971) are relevant to [the Court's] analysis:  section 193, which sets forth choice of law principles applicable to disputes concerning insurance contract; section 188, which sets forth principles pertinent to disputes involving questions of contract; and section 6, which is a general statement of principles underlying all rules regarding choice of law.  The Restatement is structured such that, when faced, as here, with a conflict of laws question involving insurance contracts, the first step is to ascertain whether the provisions of § 193 will resolve the matter; if not, the next step is to employ the principles set forth in § 188 to ascertain which State has a more significant relationship to the issues, using in that analysis the factors set forth in § 6.

*Clarendon Nat'l Ins. Co. v. Arbella Mut. Ins. Co.*, 60 Mass. App. Ct. 492, 496 (2004).

Under Section 193,

> [t]he validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 193 (1971).

Courts are divided on how to determine the principal location of the insured risk when an insurance policy covers risks in multiple states.  When a liability insurance policy covers risks in multiple states, some states use the "the state of the insured's domicile . . . as a proxy for the principal location of the insured risk."  *See, e.g.*, *Certain Underwriters at Lloyd's, London v. Foster Wheeler Corp.*, 822 N.Y.S.2d 30, 35, 36 A.D.3d 17, 24 (2006), *aff'd*, 9 N.Y.3d 928, 876

---

the insurer and its insured." 462 N.Y.S.2d at 178, 93 A.D.2d at 341.  However, it later wrote that "[a]ny such right of action arises as a result of the independent and direct duty to the excess insurer and is not dependent upon equitable principles of subrogation." 462 N.Y.S. 2d at 178, 93 A.D.2d at 342.

N.E.2d 500 (2007).  However, other states find that "the principal location of the insured risk

may be in more than one state."  *See, e.g.*, *Cadell v. XL Specialty Ins. Co.*, 2012 WL 2359975, at

*2 (D.N.H. June 20, 2012).  "Thus, 'where a policy covers risks in multiple [s]tates, the risk of

each individual state is to be treated as though it were insured by a separate policy and the

validity of and rights under the multiple risk policy as to this risk are to be governed by the law

of [that] state.'"  *Id.* (quoting *Cecere v. Aetna Ins. Co.*, 145 N.H. 660, 664, 766 A.2d 696, 699

(2001)); *see also Byer v. Wright*, 160 Ohio App. 3d 472, 476, 827 N.E.2d 835, 838 (Ohio Ct.

App. 2005) ("'Where nationwide coverage is provided, the policy's legitimate expectation is that

the site of the insured risk is more significant than the insurer's residence or the place of

negotiation.  When a larger insurer issues a policy designed to apply nationwide, it has no

legitimate expectation that the law of its residence will apply in other states.'" (quoting

*McDonald v. Williamson*, 2003 WL 22922271 (Ohio Ct. App. Dec. 11, 2003)).

It does not appear that the courts of Massachusetts have directly addressed this issue.

However, Massachusetts courts have held that where the insured risk can implicate multiple

states, other governing principles of choice of law generally point to the law of the domicile of

the policyholder.  *See, e.g.*, *General Elec. Co. v. E.W. Lines*, 2008 WL 2908053, *2-*7 (Mass.

Super. 2008) ("[I]f the simplicity of choice of law rules is 'a goal for which to strive,' the only

sensible rule in insurance coverage cases is that the domicile of the policyholder shall govern.")).

Navigators contends that "although Feeney Brothers is a Massachusetts company, the risk

at issue in this matter was located in New York.  Specifically, the decedent was working on a

construction project in New York for a New York based company . . . at the time of his injury."

(Opp. at 8).  It further contends that "HDI-Gerling was aware of the location of the risk, as

evidenced by the fact the New York limit of liability endorsement was added to the employers

liability policy." (*Id.*).  HDI-Gerling contends that "Massachusetts should be deemed the principal place of the insured risk with respect to the [Feeney Brothers] policies" because "1) [Feeney Brothers'] principal place of business is Massachusetts, . . . 2) HDI-Gerling issued its policies to [Feeney Brothers] in Massachusetts, and 3) all the policies, including HDI-Gerling's general liability and employer liability policies and Navigators' excess policy, were presumably delivered and issued to [Feeney Brothers] at its offices in Massachusetts."  (Reply at 12 n.7).

The nature and location of the activities of Feeney Brothers is unclear from the pleadings. It appears to be undisputed that Feeney Brothers is a Massachusetts company and that the decedent was working for Feeney Brothers on a construction project in New York at the time of his injury.  However, the Court cannot determine, based on the pleadings alone, the extent to which Feeney Brothers contracted to perform or performed work in Massachusetts, New York, or any other state.  Furthermore, the Court cannot determine where the relevant insurance contracts were negotiated, issued, delivered, and signed.  Therefore, the Court cannot determine the "principal location of the insured risk during the term of the policy."  *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 193 (1971).  Because the Court cannot resolve the § 193 inquiry based on the pleadings alone, it will not proceed to the next steps of the choice-of-law analysis, which also involve similar issues of fact.  Under the circumstances, the choice-of-law analysis is better suited for resolution at a later stage, with a full evidentiary record. Accordingly, the Court will defer consideration of the choice-of-law question and resolution of the bad faith and Chapter 93A claims at the present time.

**B.     Breach of the Implied Covenant of Good Faith and Fair Dealing**

Count Three of the counterclaim alleges a claim for breach of the implied covenant of good faith and fair dealing.  Under both New York and Massachusetts law, a covenant of good

faith and fair dealing is implied in every contract.  *UNO Restaurants, Inc. v. Boston Kenmore Realty Corp.*, 441 Mass. 376, 385 (2004); *Harris v. Provident Life & Acc. Ins. Co.*, 310 F.3d 73, 80 (2d Cir. 2002).  In Massachusetts, the covenant provides that "neither party shall do anything that will have the effect of destroying or injuring the rights of the other party to receive the fruits of the contract."  *Anthony's Pier Four, Inc. v. HBC Associates*, 411 Mass. 451, 471-72.  In New York, "parties to an express contract are bound by an implied duty of good faith, but breach of that duty is merely a breach of the underlying contract."  *Harris*, 310 F.3d at 80.  Therefore, absent a contractual relationship between two parties, there can be no implied covenant of good faith and fair dealing.  *See Ayash v. Dana-Farber Cancer Institute*, 443 Mass. 367, 385 (2005) ("The scope of the covenant is only as broad as the contract that governs the particular relationship."); *Four Winds of Saratoga v. Blue Cross & Blue Shield of Cent. N.Y.*, 241 A.D.2d. 906, 907 (N.Y. App. Div. 1997) ("There being no contractual relationship, neither can there be any 'covenant of good faith and fair dealing' implied which itself is based on the existence of a legal contractual obligation.").

Because there is no contract between Navigators and HDI-Gerling, Navigators cannot assert a claim for breach of the implied covenant of good faith and fair dealing against HDI-Gerling.[3]  Accordingly, that claim will be dismissed.

---

[3] The Court's ruling does not mean that the claim of Navigators for bad faith necessarily must fail.  That claim is a separate claim that has been recognized by New York courts whereby "an insurer may be held liable by an insured or the insured's excess insurer for a bad faith failure to settle a claim."  *Harris*, 310 F.3d at 80.  Therefore, under New York Law, its claim for breach of the implied covenant of good faith and fair dealing is at best duplicative of its bad-faith claim.  If it represents a separate claim, it is one for breach of contract.  *See id.*  "There being no contractual relationship [between HDI-Gerling and Navigators], neither can there be any 'covenant of good faith and fair dealing' implied which itself is based on the existence of a legal contractual obligation."  *Four Winds of Saratoga*, 241 A.D.2d at 907.

IV.      **Conclusion**

For the foregoing reasons, the motion to dismiss by HDI-Gerling is GRANTED as to Counts Two and Three of the counterclaims, and is otherwise DENIED without prejudice. Count Two for equitable subrogation and Count Three for breach of the implied covenant of good faith and fair dealing are DISMISSED.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
Dated: September 11, 2015       United States District Judge